**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**WILLIAM BRYAN DOTSON**                                        **PLAINTIFF**

**V.**                                 **CIVIL ACTION NO.:4:20-CV-169-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY**                                    **DEFENDANT**

**<u>MEMORANDUM OPINION</u>**

The plaintiff, William Bryan Dotson, seeks judicial review of the Social Security Administration's decision denying his application for Social Security Disability and Supplemental Security Income. The plaintiff asserts four errors. The undersigned has reviewed and considered the record, briefs, and oral argument. Having also considered the applicable regulations and case law in this matter, the undersigned finds prejudicial error was committed. The Commissioner's decision is reversed, and this matter remanded for further proceedings.

**<u>FACTS</u>**

The plaintiff, William Dotson, filed for benefits on March 28, 2016, alleging onset of disability beginning January 1, 2016. The plaintiff alleges he is disabled by severe back problems and depression. The Social Security Administration denied the claim initially and on reconsideration. After an initial hearing and unfavorable decision, the Appeals Council remanded the case for further consideration. Following the hearing on remand, the Administrative Law Judge issued an unfavorable decision on February 19, 2020. (Dkt. 9 p.15-27).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] The administrative record is Docket 9. Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

The ALJ determined Dotson has the following severe impairments: degenerative disc disease, status post laminectomy and discectomy and obesity. The ALJ found Dotson retained the residual functional capacity (RFC) to perform light work, except he can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. He cannot climb ladders, ropes, or scaffolds. R. 20. The plaintiff underwent a bilateral inferior L2 through superior L5 decompressive laminectomy on March 21, 2016. Dotson, with a BMI of 48, is morbidly obese. R. 20.

The ALJ determined the plaintiff did not have any past relevant work experience, but found, based on the testimony of the vocational expert, that he could work at other jobs . The VE identified the jobs of linen grader, garment sorter and silverware wrapper, as within Dotson's RFC. These jobs are all performed at the light level of exertion, are unskilled work, and represent 118,000, 196,000 and 152,000 jobs respectively in the national economy.

## Analysis

The plaintiff asserts four errors in his appeal, which the court has reordered for the purposes of its discussion. Dotson argues the ALJ erred both in giving little weight to the opinion of his treating physician and in giving significant weight to the opinions of Disability Determination Services (DDS) physicians. He argues the DDS opinions should not be given so much weight because they were formulated without the benefit of much of the material medical evidence. The plaintiff also argues the ALJ erred by failing to incorporate all his mental health restrictions into his residual functional capacity. Finally Dotson asserts that the Appeals Council erred in failing to properly consider medical evidence submitted after the hearing.

### 1.  Weighing of the Treating and Non-examining Physicians' Opinions

The plaintiff argues the ALJ erred both in giving little weight -- in fact, no weight -- to the opinions of his treating physician and in giving significant weight to the contrary opinions of two non-examining DDS physicians.

When Dotson filed his application in early 2016, one set of administrative regulations and related case law applied. Beginning for claims filed on or after March 17, 2017, the Social Security Administration put substantially revamped regulations into effect for claims filed from that point forward. 20 C.F.R. § 404.1520(c) and 414.920(c).  The regulations made major changes in the evaluation of evidence at the hearing level and the requirements for how much explanation the ALJ's decision must include to explain his analysis of the evidence.

Under the older regulatory regime, which should be applied in this case, the opinions of treating physicians, in the absence of a showing of good cause, were to be accorded substantial, considerable, or even controlling weight.  *Newton v. Apfel*, 209 F.3d. 448 (5th Cir. 2000); *Broughton v. Heckler,* 776 F.2d 960 (11th Cir.1985); *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir.1986). As in this case, when there is no controverting opinion evidence from a *treating or examining source*, the ALJ may reject a treating source's opinions, giving them little or no weight, only after providing a detailed analysis of enumerated regulatory factors per *Newton*. These enumerated factors are the length of the treating relationship; the frequency of examination; the nature and extent of the treatment relationship; the support for the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician.  *Id*. at 456. The opinions of other providers were not similarly favored by the regulations.

Under the new regulations this hierarchy of opinions is no more and the ALJs are directed to determine whether the opinions of any medical expert — treating, examining, or non-examining — taken as a whole, are persuasive. While the factors to be considered in making the persuasiveness decision are largely the same as the *Newton* factors, 20 C.F.R. § 404.1520(c),[2] the ALJs are now only required to address two factors in their decisions — the supportability of the opinions and the consistency of the opinions with other evidence in the record.

Based on its reading of the decision, the court cannot be sure which set of regulations and case law were actually applied by the ALJ. Because the treating physician's opinion, if accepted, would necessarily lead to a favorable decision and because under the applicable law and regulations, strong presumptions favor accepting that opinion, ambiguity about what law was applied is prejudicial.

And there is ambiguity. The problem in this case is the ALJ's analysis of both the treating physician's opinions and the two DDS physician's opinions reads exactly like a persuasiveness analysis under the new regulations, excepting only that the decision references "weight" rather than "persuasiveness." It addresses only the factors set out under the new regulations, not the detailed analysis required by *Newton.* The ALJ clearly failed to provide the necessary explanation for her decision to reject the treating physician's opinion. For the reasons stated below, the court finds the ALJ erred in both her analysis of the medical source statement by the plaintiff's treating physician and in giving great weight to the opinions of the DDS physicians.

Addressing the treating physician's opinion the ALJ noted Doyle found Dotson could not lift or carry more than ten pounds, could stand and walk for only fifteen minutes at a time, for up

---

[2] The factors are (1) supportability, 2) consistency, 3) relationship with the claimant including the length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of treatment relationship, and examining relationship, 4) physician's relationship, and 5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.)

to an hour per day. Dotson could only sit for an hour at a time, for up to three hours per day. He

had manipulative limitations, and limits on the use of foot controls and pushing and pulling.

Doyle opined Dotson would need to use a wheelchair or two canes or crutches to ambulate.

These restrictions clearly would preclude any employment.

> The ALJ found:

> The undersigned gives this opinion little weight because it is inconsistent with the
> record as a whole. While the claimant's back impairment and obesity would limit
> him to a light level, the record reflects improvement after his surgery and physical
> therapy and do not support these extreme limitations. The opinion is also
> inconsistent with the investigation report, which shows that the claimant had little
> problem ambulating. The limitations with reaching, handling, and fingering are
> simply not consistent with his physical examinations." R. 25.

Nothing in this analysis indicates an awareness of or consideration of the presumption that these

opinions were entitled to controlling or great weight. The required *Newton* analysis has not been

done. What is shown is a persuasiveness analysis as if the new regulations applied. Furthermore,

while the ALJ says the opinions were given little weight, those opinions are so inconsistent with

the RFC as to demonstrate the ALJ rejected the opinions outright.

Furthermore, under *Newton*, "if the ALJ determines that the treating physician's records

are inconclusive or otherwise inadequate to receive controlling weight, absent other medical

opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek

clarification or additional evidence from the treating physician in accordance with 20 C.F.R. §

404.1512(e)." *Newton,* 209F.3d at 453. The record before the ALJ contains no controverting

examining medical opinion, and the ALJ rejected the opinions without the required follow up

with the treating physician.

The Commissioner argues N*ewton* does not apply and that any failure to provide a

*Newton* analysis is harmless. The court rejects this argument. The brief argues there is competing

first-hand medical evidence, making *Newton* inapplicable, but it was conceded at oral argument that this is a misstatement. The ALJ's decision must rise or fall on what is said in the decision. *Newton,* 209 F.3d at 455.  The analysis simply was not done, and the decision offers little to no assurance that the applicable law was in fact applied in the decision.

The ALJ also erred in relying on the opinions of the DDS physicians to find that this extraordinarily obese man, after serious back surgery, could perform light work. The opinions of DDS physicians are subject to limits because they are not based on examinations and because they are almost always relying on less than complete records. But under applicable case law, the opinions of non-examining physicians, when directly contradicted by the treating physician's opinions, are not substantial evidence as a matter of law to support the RFC and the decision. *Kneeland v. Berryhill*, 859 F.3d 749, 761 (5th Cir, 2017) (holding reports of physicians who did not examine the claimant, taken alone, would not be substantial evidence).  Here, the ALJ based her decision on these contradicted non-examining opinions, and thus there is no substantial evidence to support it.

**2.  Failure to Include Mental Health Limitations in the RFC.**

Next, the plaintiff argues the ALJ erred in failing to find Dotson suffered from severe mental issues and in failing to include any related limitations in his RFC. He argues that there "is a conspicuous absence of credible choices," *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983), to support the ALJ's decisions on his mental conditions.  The court agrees.

Four mental health specialists found Dotson had impairments that would have more than a minimal impact on his capacity to work.  The ALJ attempts to justify finding no severe mental impairment at Step Two and no limitations in the RFC, noting "the majority of the claimant's

mental status exams at his emergency department visits and physical therapy throughout 2015 and 2016 were normal."(Exhibit 1F-3F) R. 23.

While there is some variation between what the DDS and treating/examining experts opined about Dotson, each found medically determinable impairments and limitations that would impact his ability to perform work activities. This unanimity of expert opinion of the existence and limiting impact of mental/social impairments, while not necessarily indicating Dotson is disabled, certainly meets the *de minimus* standard for a severe impairment. *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985)( **"**[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."). But even if Dotson's conditions were properly classified as non-severe, some limitations would still need to be included in the RFC unless the mental conditions caused *no* limitations, a finding that is not supported by substantial evidence.

The ALJ rejected the opinions of every mental health expert in the record, beginning with Dr. Morris Alexander, Ph.D., who performed a consultative examination on June 26, 2016. While he entertained some suspicions of malingering based on smiling between Dotson and his wife at "odd times," he tested Dotson and found he had full-scale IQ of 57 and multiple achievement tests scores at elementary grade levels. Morris did note Dotson had a ninth-grade education and no special education class and that he suspected a pseudo dementia, or that the low scores were the result of his "hanging out with the wrong crowd." Morris, nevertheless, found Dotson was limited to performing routine, repetitive tasks. The ALJ gave Morris' opinion little weight. While admitting that his opinions were generally supported by his examination findings, the ALJ nevertheless found them inconsistent with the record as a whole, explaining the record

mainly showed normal mental status exams throughout the relevant period "until just recently." The ALJ also wrote: "Further, the record reflects no obvious cognitive deficits with the main complaint being self-isolative behavior."

The state disability determination providers both found Dotson would be limited to understanding, remembering, and carrying out detailed tasks based on moderate concentration limitations. The ALJ gave little weight to these opinions because they did not include a discussion of the mental health evidence and were "inconsistent with the claimant's relatively normal mental status exams throughout the relevant period. Even recent mental status exams primarily reflected issues with his mood and affect rather than his concentration."

Dr. Nadia Bethley, Ph.D. was Dotson's treating mental health provider. Per the decision:

> She provided a statement that primarily recounts the claimant's reported symptoms, noting his symptoms were reported to interfere with his relationships and his ability to engage productively throughout the day (Ex 14 F ). This opinion is given little weight. It is essentially a recitation of the claimant's reported symptoms and is not stated in vocationally relevant terms with regards to the claimant's functional limitations. Dr. Bethley notes that the claimant has missed appointments due to problems leaving the house. However, as documented above the claimant presented on numerous occasions for treatment related to back pain and exhibited normal mood and affect at these visits. R. 25.

First, the ALJ gave reasons for rejecting the opinions of the mental health which appear to the court to be a pretext and indicate the ALJ may have been substituting her lay opinion for those of the professionals. The DDS reports in this case are no more lacking in detail than hundreds of other DDS reports the SSA routinely relies upon. These records are always perfunctory. The ALJ admitted Morris' findings were supported by his examination, but nevertheless gave his opinions and restrictions little weight because in her words the "record reflects no obvious cognitive deficits." R. 25. But the court cannot square these terrible test

results with the ALJ's conclusion that Dotson did not have "obvious cognitive deficits" and her further refusal to adopt the vocational limitations Morris found.

The ALJ dismissed Bethley's opinion letter as mere repetition of Dotson's symptoms, but it, and the supporting treatment records, read like standard documentation and reports seen from other mental health professionals.  These providers, among other things, always recount their patient's subjective symptomatology. But Bethley also treated Dotson and diagnosed him as meeting the criterion for suffering from a major depressive disorder that was recurrent and moderate.  She found his depressive symptoms were exacerbated by his chronic back pain.  Dr. Doyle's treatment records also noted depressive symptoms and anxiety during at least some of Dotson's treatment.

As to Dr. Bethley's letter not providing the restrictions in "vocationally relevant terms" the vocational impact of "significant fatigue, insomnia, increased irritability" and "symptoms of agoraphobia" resulting in "significant anxiety when leaving the house" is clear.  The court does not see this as a reason to dismiss the opinion of the treating provider, particularly where as in Dotson's case, it is consistent with the opinions of every other mental health expert in the record. If further clarification was needed to translate the doctor's findings into "vocationally relevant terms," the ALJ was obliged to follow up with Dr. Bethley. *Newton,* 209 F.3d at 458.

A decision that Dotson has no severe mental/emotional impairments, as defined by the Social Security Administration and no related limitations despite four concurring opinions by mental health specialists cannot be justified by "normal" mental status notations, or the absence of any abnormal mental status notations by emergency room personnel and or physical therapists at physical therapy sessions.  These professionals are not mental health specialists and physical therapists are still not recognized as "acceptable" medical sources.  These professionals are

focused on treating physical impairments, not on mental problems. Nor did Dotson go to them for mental health treatment, so it would not be abnormal for him to omit discussing emotional difficulties.

Because the ALJ failed to account for any cognitive, social, or interactive limitations in the RFC, the decision is not supported by substantial evidence and must be reversed and remanded for further consideration.

### 3.  Appeals Council Review

After the ALJ's decision Dotson submitted treatment records and a medical source statement from a nurse practitioner who was treating him for chronic pain.  She found Dotson would need to take unscheduled breaks during the normal workday and be off task up to 25% of the time because of his chronic low back pain and radiculopathy. Because his impairments would cause good days and bad days, Dotson would miss four or more days per month.  He could stand and walk less than 2 hours per day. The Appeals Council reviewed the records and decided the new evidence probably would not change the ALJ's decision.

Currently SSA regulations deem nurse practitioners to be acceptable medical sources, but under the older regulations applicable to this case, they were not. While information from these sources was still considered in reaching disability determinations, they had a more limited impact on the decision-making process because of the nurse practitioners' regulatory designation. Furthermore, the records and statement submitted to the Appeals Council are cumulative to other information in the record, especially the treating physician's medical source statement. Therefore, the court does not find the Appeals Council's erred in deciding this additional evidence would not likely alter the outcome of the decision, though it certainly should be considered on remand.

**CONCLUSION**

Finding prejudicial error in the application of the regulations, and that the decision is not supported by substantial evidence, the court reverses the decision of the Commissioner and remands the case for further consideration consistent with this opinion. A separate judgment will issue.

THIS the 19th day of January, 2022.

**/s/ David A. Sanders**
**U.S. MAGISTRATE JUDGE**